MINUTE ENTRY
AFRICK, J.
May 7, 2020
JS-10 00:20

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BARBARA MELANCON, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **No. 19-11703** |
| **CONAGRA GROCERY PRODUCTS COMPANY, LLC** | **SECTION I** |

## ORDER

Before the Court is the plaintiffs' motion[1] to modify the scheduling order. On May 7, 2020, the Court held a telephone conference with J. Courtney Wilson ("Wilson"), counsel for the plaintiffs, and Michael Rutledge, counsel for the defendant, to discuss the motion and the defendant's opposition thereto.

The Court will first provide a summary of the relevant proceedings to date.

On July 15, 2019, the above-captioned complaint[2] was filed in connection with a claim for wrongful death and survivor benefits demanded by the children of Dorthea H. Melancon ("Dorthea"),[3] the deceased wife of Leon Melancon, Jr. ("Leon"). Leon allegedly died of asbestos-related lung cancer in 2018. According to the complaint

---

[1] R. Doc. No. 19.
[2] R. Doc. No. 1.
[3] The complaint uses the spelling of both "Dorthea" and "Dorothea." *See* R. Doc. No. 1, at 1. For consistency, the Court will refer to "Dorthea."

filed by Wilson, the fourteen children asserted claims individually and on behalf of Dorthea.

As stated in the complaint, for an unknown period of time between 1946 and about 1972, Leon was employed, "among other asbestos contaminated places," at the Hunt-Wesson plant that the defendant operated in Jefferson Parish.[4] The complaint alleges that during such employment, Leon came into contact with asbestos.[5] According to the complaint, Leon would return home from work "covered in white/grayish dust," which would come into contact with Dorthea and remain in their home.[6] The complaint also alleges that the defendant used a dump located across the street from Dorthea and Leon's home for asbestos-containing waste material.[7] All of this allegedly "increased" Dorthea's contact with asbestos.

When the Court first received the complaint, the Court was unaware of the fact that Wilson had no authority to represent—and file a lawsuit on behalf of—seven of the fourteen children initially named as plaintiffs.[8] Those seven plaintiffs have since been dismissed because they had not authorized Wilson to represent them in these proceedings.[9]

---

[4] *Id.* at 2 ¶ 3.
[5] *See id.*
[6] *Id.* at 2 ¶ 5.
[7] *Id.* at 2 ¶ 6.
[8] *See* R. Doc. Nos. 14 & 16.
[9] *See* R. Doc. Nos. 16 & 18.

On April 29, 2020, Wilson filed the instant motion[10] to modify the scheduling order because he had not met the expert report deadline previously set by the Court on February 5, 2020.[11] Such motion was filed on the date that the deadline expired.

Wilson admitted that he first met with a potential expert on April 24, 2020, but that expert was not retained because of a disagreement over the expert fee.[12] Wilson also admitted that he had still not obtained Leon's employment history documents, which the expert needed to complete his report.[13]

In opposition and in response to Wilson's motion, defense counsel explained that, in an effort to accommodate Wilson, the defendant offered to agree to a date by which plaintiffs could submit supplemental expert reports, if necessary, with information contained in the employment records not yet received.[14] Defense counsel had previously been under the impression that in October 2019, such records had been requested by the plaintiffs from the Social Security Administration.[15] Wilson declined the defendant's offer of compromise.[16]

At the May 7, 2020 status conference, the Court admonished Wilson for his lack of diligence and his failure to meet the deadline set forth in the scheduling order. The admonishment was a consequence of the Court's concern about Wilson's conduct,

---

[10] R. Doc. No. 19.

[11] *See* R. Doc. No. 10.

[12] R. Doc. No. 19-1, at 1.

[13] *See id.* at 1–2.

[14] R. Doc. No. 22-1, at 3.

[15] R. Doc. No. 22, at 3–4. The defendant submitted a copy of an email that Wilson sent to defense counsel on October 7, 2019, which states, "I mailed the request for SS records today with birth certificates." R. Doc. No. 22-3, at 1.

[16] *Id.* at 2.

as well as the Court's desire to deter future violations of this Court's orders. The Court informed Wilson that it was aware of the growing body of cases in which Wilson's professional conduct has been at issue. Wilson's repeated response to the Court was "show me." Wilson denied his awareness of previous sanctions and, in an intemperate tone, he challenged the Court to advise him of **any** instances in which he had been sanctioned, surely knowing, considering the number and nature of previous sanctions, admonishments, and/or reprimands against him, that there were other cases supporting the Court's statement to Wilson.[17]

A brief search of case records reveals the following, which evidences Wilson's lack of candor with the Court:

Sanctions

- *Sandifer v. Gusman*, 637 F. App'x 117, 122 (5th Cir. 2015) (affirming Judge Carl J. Barbier's orders sanctioning Wilson, which included denying Wilson's motion to enroll as counsel of record, striking Wilson as co-counsel, and imposing a $1,000 monetary penalty for violating his duty of candor and previous orders of the court).[18]

- *Feist v. State*, No. 09-7060, 2011 WL 13128832, at *2 (E.D. La. Apr. 13, 2011) (Shushan, M.J.) (ordering Wilson to pay a sanction of $250 to counsel for the defendant based on the finding that the plaintiff's motion to compel was not substantially justified and the admission that the motion was "inadvertently filed").

---

[17] For example, at a January 30, 2013 show cause hearing against Wilson before Judge Carl J. Barbier, Judge Barbier informed Wilson that he was a "chronic offender around here" and stated to Wilson that he and other judges have "had problems with [Wilson] numerous times." R. Doc. No. 111, at 8–9, *Sandifer v. Orleans Par. Gov't*, No. 11-1798 (E.D. La. Jan. 30, 2013).

[18] Judge Barbier found that Wilson "ha[d] blatantly violated previous orders of this court" and that Wilson "violated [his] duty of candor to the court." R. Doc. No. 116, at 21, No. 11-1798, *Sandifer v. Orleans Par. Gov't*, No. 11-1798 (E.D. La. Jan. 15, 2014).

- *Brown v. Oil States Skagit Smatco*, No. 09-3793, 2010 WL 11549562, at *3 (E.D. La. Sept. 17, 2010) (imposing a $500 monetary sanction against Wilson for his failure to comply with Rules 2.1 and 3.2 of the Louisiana Rules of Professional Conduct), *report and recommendation adopted*, No. 09-3793, 2010 WL 4793316, at *1 (E.D. La. Nov. 17, 2010) (Lemmon, J.), *aff'd*, 664 F.3d 71 (5th Cir. 2011).[19]

- *Conerly v. Ordeneaux*, 143 F. App'x 575, 576 (5th Cir. 2005) (dismissing Wilson's appeal of a sanctions order issued following Wilson's failure to appear at a scheduled pretrial conference and the magistrate judge's determination that Wilson had not adequately complied with her resulting order requiring Wilson to write a letter of apology to opposing counsel).[20]

Admonishments, Reprimands, and/or Adverse Consequences for Wilson's Client(s) as a Result of Wilson's Conduct

- *Shah v. Jefferson Par. Sch. Bd.*, No. 11-2517, 2013 WL 6388635, at *2 (E.D. La. Dec. 6, 2013) (Zainey, J.) ("Plaintiff's counsel is admonished that, if he continues to file motions on issues resolved by previous rulings, sanctions may be imposed.").

- *In re Wilson*, 2012-1028 (La. 6/15/12), 91 So. 3d 280 (The Louisiana Supreme Court accepted a joint petition for consent discipline and publicly reprimanded Wilson).

- *Green v. Archer Daniels Midland*, No. 10-4481, 2012 WL 85409, at *3 (E.D. La. Jan. 11, 2012) (Africk, J.) (affirming the magistrate judge's order denying the plaintiffs' motion to extend the discovery deadline and finding that the magistrate judge did not clearly err considering, *inter alia*, Wilson's "admitted lack of diligence." Wilson conceded that his failure to include two witnesses in the plaintiffs' initial subpoena request was caused by "a lack of thoroughness.").

---

[19] Wilson did not appeal the imposition of monetary sanctions, but rather filed a motion for recusal of the magistrate judge. The district court denied the motion, and the United States Court of Appeals for the Fifth Circuit affirmed the district court's decision. *See Brown*, 664 F.3d at 7.

[20] The Fifth Circuit dismissed Wilson's appeal for lack of jurisdiction. *Conerly*, 143 F. App'x at 576. In the lower court proceeding, the district court overruled Wilson's objection to the magistrate judge's order requiring Wilson to write a letter of apology to opposing counsel and pay $100 in sanctions. R. Doc. No. 15, *Conerly v. Ordeneaux*, No. 04-1580 (E.D. La. Nov. 12, 2004) (Lemmon, J.).

- *Worley v. Louisiana*, No. 10-3313, 2011 WL 2837403, at *2 (E.D. La. July 15, 2011) (Africk, J.) (granting the plaintiff's motion to alter judgment or, alternatively, for relief from judgment with respect to the Court's dismissal of plaintiff's case because prior to withdrawing his representation, plaintiff's prior counsel, Wilson, erroneously advised plaintiff with respect to the deadline for filing proof of service into the record. The Court found that, "[g]iven plaintiff's assertion of her good faith attempt to comply with the Court's order despite her less than diligent former counsel, the Court finds that exercising its considerable discretion to grant Rule 59(e) relief is warranted in these circumstances.).[21]

- *Duperon v. Mizell*, No. 06-3325, 2007 WL 9761610, at *3 (E.D. La. Jan. 8, 2007) (Shushan, M.J.), *aff'd*, 265 F. App'x 348 (5th Cir. 2008) (dismissing the plaintiff's complaint for failure to prosecute and finding that the plaintiff was "not personally responsible for the delay." Rather, "[t]he failure of Duperon's counsel [Wilson] to implement procedures to properly the [sic] track the deadlines in each of these cases and to take the extra care required to avoid confusion caused by the similarity of the cases amount[ed] to intentional conduct" warranting the sanction of dismissal.).[22]

- *Fabre v. American Airlines, Inc.*, No. 05-1647 (E.D. La. Sept. 6, 2006) (Feldman, J.) (ordering Wilson to show cause "why he should not be sanctioned for his persistent refusal to comply with his professional obligations as ordered and as previously warned by the Court").

- *Foster v. Hughes*, No. 03-3244, 2004 WL 1774614, at *2 n.3 (E.D. La. Aug. 5, 2004) (Barbier, J.) (cautioning Wilson that his conduct bordered on sanctionable conduct under Federal Rule of Civil Procedure 11).

Notwithstanding Wilson's failure to abide by this Court's order and his lack of candor, including his refusal to concede a previous pattern of unacceptable conduct,

---

[21] In support of her motion, the plaintiff asserted that she "[r]eceived correspondence from her then counsel of record, J. Courtney Wilson[,] that this court had dismissed her case for an alleged 'mistake' made by former Counsel which 'caused the judge to dismiss your' case." R. Doc. No. 28-1, at 1.

[22] The court also noted, "Duperon's counsel [Wilson] has practiced for more than thirty-five years. A search of the Court's records reveals that since 1985 he has been counsel of record in more than 300 cases. Sanctions have been assessed against him in the past." 2007 WL 9761610, at *2 n.1 (citing *Conerly*, No. 04-1580 (E.D. La. Nov. 12, 2004) and *Fabre v. American Airlines, Inc.*, No. 05-1647 (E.D. La. Sept. 6, 2006)).

the Court recognized that expert testimony is critical to the plaintiffs' claims, although Wilson has not yet retained an expert. Noting the upcoming August 31, 2020 trial date, the Court declined to preclude plaintiffs from presenting expert testimony.[23] The Court expressed its concern that if it were to prohibit the proposed expert from testifying, plaintiffs would pay a significant price—i.e. dismissal of their claims—as a result of Wilson's lack of diligence and failure to, without good cause, comply with the Court's deadline. Therefore, the Court provided plaintiffs with an extension of approximately three weeks to provide an expert report.[24] At the conference, Wilson accepted this extension as a "fair" resolution.

---

[23] Under Federal Rule of Civil Procedure 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent." The good cause standard "requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)).

Pursuant to Federal Rule of Civil Procedure 16(f)(1)(C), on motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney fails to obey a scheduling or other pretrial order.

When deciding whether to extend expert report deadlines, a court must consider: "(1) the explanation for the failure [to submit the expert report]; (2) the importance of [the report]; (3) potential prejudice in allowing [the report]; and (4) the availability of a continuance to cure such prejudice." *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 740 (5th Cir. 2010) (quoting *Geiserman v. MacDonald,* 893 F.2d 787, 791 (5th Cir. 1990)).

[24] Pursuant to the February 5, 2020 scheduling order, written reports of experts from the plaintiffs were due on April 29, 2020. R. Doc. No. 10, at 2. They are now due on May 21, 2020.

Accordingly,

**IT IS ORDERED** that the motion to modify the scheduling order is **GRANTED IN PART AND DENIED IN PART**.

Written reports of the plaintiffs' experts, in compliance with Federal Rule of Civil Procedure 26, shall be made available to counsel for the defendant as soon as possible, but in any event no later than **MAY 21, 2020**. Written reports of the defendant's experts, in compliance with Federal Rule of Civil Procedure 26, shall be made available to counsel for the plaintiffs as soon as possible, but in any event no later than **JUNE 22, 2020**.

**IT IS FURTHER ORDERED** that all other deadlines remain as previously set forth in the scheduling order.[25]

**IT IS FURTHER ORDERED** that the Court will schedule a hearing to show cause why Wilson should not be sanctioned by the Court, pursuant to Rule 16(f) of the Federal Rules of Civil Procedure and/or the Court's inherent authority, due to Wilson's noncompliance with the Court's scheduling order and his lack of candor with the Court.[26]

---

[25] *See* R. Doc. No. 10. Although Wilson's motion requested a continuance of "the trial and all dates," R. Doc. No. 19-1, at 2, the focus of the status conference and Wilson's memorandum in support of his motion was the expert report deadline.

[26] Under Rule 3.3 of the Louisiana Rules of Professional Conduct, which governs a lawyer's duty of candor toward the court, lawyers may not knowingly make a false statement of fact or law to the court or fail to correct a false statement of material fact or law that the lawyer previously made to the court. LA ST BAR ART 16 RPC Rule 3.3(a)(1). This duty continues to the conclusion of the proceeding. LA ST BAR ART 16 RPC Rule 3.3(c). In addition, under Rule 3.4, lawyers may not "knowingly disobey an obligation under the rules of [the court], except for an open refusal based on an assertion that no valid obligation exists." LA ST BAR ART 16 RPC Rule 3.4(c).

8

New Orleans, Louisiana, May 11, 2020.

_____

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

It is professional misconduct for a lawyer to violate the Rules of Professional Conduct and to "engage in conduct that is prejudicial to the administration of justice." LA ST BAR ART 16 RPC Rule 8.4(c) and (d). The Court adopted the Louisiana Rules of Professional Conduct pursuant to Local Rule 83.2.3.

As the Fifth Circuit has stated, a federal court may hold attorneys accountable to the state code of professional conduct. *In re: Deepwater Horizon*, 824 F.3d 571, 577 (5th Cir. 2016). Pursuant to its inherent authority, the Court may sanction an attorney for engaging in bad-faith conduct, which may include violations of the attorney's duty of candor to the Court. *See Deepwater Horizon*, 824 F.3d at 583, 586–87; *Sandifer*, 637 F. App'x at 121; *U.S. ex rel. Holmes v. Northrop Grumman Corp.*, 642 F. App'x 373, 378–79 (5th Cir. 2016) (applying the American Bar Association's Model Rules of Professional Conduct).